UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**JEFFREY HARDY**,

    Plaintiff,

v.                                                      6:24-cv-587-NPM

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

---

## OPINION AND ORDER

Plaintiff Jeffrey Hardy seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 13),[1] Hardy filed an opening brief (Doc. 16), the Commissioner responded (Doc. 19), and Hardy replied (Doc. 20). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

**I.  Eligibility for Disability Benefits and the Administration's Decision**

    **A.  Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

---

[1] Cited as "Tr." followed by the appropriate page number.

twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, non-exertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B.     Factual and procedural history

On March 6, 2019, Hardy applied for disability insurance benefits. (Tr. 326-27). He asserted an alleged onset date of January 1, 2017, alleging disability due to the following: early signs of dementia, anxiety, depression, post-traumatic stress disorder, and high blood pressure. (Tr. 116). As of the alleged onset date, Hardy was 51 years old and had an associate degree in science. (Tr. 115, 848). He served in the Navy, was medically discharged after 18 months, and worked as a law enforcement

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. § 404.1505.

[3] *See* 20 C.F.R. § 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 404.1594(b)(4) (defining functional capacity to do basic work activities).

[4] *See* 20 C.F.R. § 404.1511.

officer. (Tr. 848).

On behalf of the administration, a state agency[5] reviewed and denied Hardy's application initially on July 22, 2019, and upon reconsideration on November 15, 2019. (Tr. 115-35). At Hardy's request, Administrative Law Judge (ALJ) Stephen Calvarese held hearings and, on December 1, 2020, issued an unfavorable decision finding Hardy not disabled. (Tr. 137-158). Hardy's timely request for review by the administration's Appeals Council was approved on September 27, 2021. (Tr. 159-64). ALJ Kelley Fitzgerald held a remand hearing and denied the claim on October 4, 2023. (Tr. 12-29). Hardy appealed again, which the Appeals Council denied, making ALJ Fitzgerald's decision final. (Tr. 1-6). Hardy then brought the matter to this court, and the case is ripe for judicial review.

## C.    The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 404.1503(a).

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 404.1512 (providing that the claimant must prove

disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Hardy had not engaged in substantial gainful activity from January 1, 2017, the alleged onset date, to December 31, 2021, the date last insured. (Tr. 17). At step two, the ALJ characterized Hardy's severe impairments as: substance abuse disorder (alcohol); depressive disorder; post-traumatic stress disorder, and cognitive disorder. (Tr. 18). At step three, the ALJ determined Hardy did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 18).

As a predicate to step four, the ALJ arrived at the following RFC:

> [Hardy] had the residual functional capacity to perform a range of work at all exertional levels but with the following nonexertional limitations: that does not require understanding[,] remembering[,] and carrying out more than simple instruction or using judgement (*sic*) to make more than simple work-related decisions in a routine work setting. (Tr. 20).

Consequently, the ALJ found Hardy could not perform his past relevant work. (Tr. 27). At step five, the ALJ found Hardy could perform other work that exists in

significant numbers in the national economy. (Tr. 28). In support, a vocational expert testified (Tr. 56-58) that an individual of Hardy's age, education, work experience, and RFC can perform jobs within the following representative occupations:

- *Laborer Stores,* DOT #922.687-058, medium, SVP 2, with 82,308 jobs nationally;
- *Hand Packager,* DOT #920.587-018, medium, SVP 2, with 76,894 jobs nationally;
- *Cleaner II*, DOT #919.687-014, medium, SVP 1, with 151,308 jobs nationally.[6]

Thus, for purposes of the Act, the ALJ concluded Hardy was not disabled from January 1, 2017, the alleged onset date, through December 31, 2021, the decision date. (Tr. 29).

## II.   Analysis

Hardy's appeal presents the following issues for review:

(1) Whether the ALJ adequately explained why she found a medical opinion from Lynn Ann Howard, APRN, unpersuasive.

(2) Whether the ALJ adequately accounted for a moderate limitation in Hardy's ability to concentrate, persist, and maintain pace by restricting the RFC to simple and routine tasks.

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

### A. Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). And the court must account for favorable and unfavorable evidence to a disability finding and view the evidence as a whole. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). But the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the

agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B. The ALJ adequately explained why she found Howard's medical opinion unpersuasive.

In August 2020, Howard completed a treating source statement regarding Hardy's psychological conditions[7]. (Tr. 1047-51). The statement noted an overall poor prognosis and symptoms consistent with depression, manic syndrome, general anxiety disorder, and loss of cognitive abilities. (Tr. 1047-48). It also noted

- A moderate limitation in ability to interact with others;

- Marked limitations in ability to understand, remember or apply information; ability to concentrate, persist, or maintain pace; ability to adapt or manage oneself, and short and long-term memory; and

- Extreme limitations in remembering locations and work-like procedures, understanding and carrying out very short and simple instructions, and understanding and carrying out detailed but uninvolved written or oral instructions. (Tr. 1049-50).

Among other observations, it noted that Hardy would likely be off task more than 25% of the time and absent from work four or more days a month. (Tr. 1051).

For claims filed on or after March 27, 2017—such as this one—an ALJ must use the same set of factors to assess all medical opinions. *See* 20 C.F.R. § 404.1520c. No longer is an ALJ to afford deferential weight to the opinions of any particular

---

[7] Dr. Gary Frick also signed this report, but it appears his signature was purely administrative.

source, such as a treating physician. *Id.* As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examination and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(b)(2). Supportability refers to "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her" opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency requires "the evidence from other medical sources and nonmedical sources" to be consistent with the medical opinion presented. 20 C.F.R. § 404.1520c(c)(2). Thus, persuasiveness, rather than weight, matters when assessing a medical opinion. 20 C.F.R. §§ 404.1520c, 404.1527(c).

The ALJ found Howard's opinion "unpersuasive due to lack of support from the largely benign mental status examination findings from treatment records and the inconsistency of the findings when compared to the opinions from the consultative examination [of Dr. Ramirez]." (Tr. 26). Hardy considers this an inadequate explanation.

Addressing the supportability factor, the ALJ explained that the largely benign mental status examination findings did not support this opinion. (Tr. 26). *See* 20

C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) the more persuasive the medical opinions will be."). As discussed earlier in the decision, the records from Northeast Florida Psychiatric–where Nurse Howard worked–repeatedly show unremarkable mental status findings, including intact memory, fair attention, normal thought processes and content, and euthymic affect. (Tr. 22, 24, 763-71, 950-55, 1124-28.) *See Moore v. Kijakazi*, No. 8:23-cv-206-AAS, 2023 WL 8187216, *6 (M.D. Fla. Nov. 27, 2023) ("The regulations do not prevent an ALJ from referring to evidence discussed elsewhere in the decision when evaluating medical opinions."). So, substantial evidence supports the ALJ's evaluation of the supportability of Howard's opinion.

The ALJ also found Howard's opinion inconsistent with that of the psychological consultative examiner, Dr. Diane Ramirez. *See* 20 C.F.R. § 404.1520c(c)(2) (explaining a medical opinion is more persuasive the more consistent it is with the evidence from other medical and nonmedical sources in the claim.) As discussed by the ALJ earlier in the decision, Ramirez's evaluation of Hardy was almost entirely normal, including adequate remote memory, good intermediate memory, adequate judgment, unimpaired cognition, adequate attention and concentration, average intelligence, and unremarkable thought process and content. (Tr. 23-24, 849). Ramirez opined the severity of Hardy's symptoms to be

moderate, which partially persuaded the ALJ. (Tr. 24, 850). Thus, substantial evidence also supports the ALJ's conclusion about the consistency of Howard's opinion. This analysis demonstrates that the ALJ properly considered the consistency of Howard's opinion. An ALJ need only cite relevant evidence that a reasonable person would accept to support a conclusion. *Goode*, 966 F.3d at 1280 (internal citation omitted). And we are required to defer to her judgment. *Biestek*, 139 S. Ct. at 1157.

### C. The ALJ adequately accounted for a moderate limitation in Hardy's ability to concentrate, persist, and maintain pace by restricting the RFC to simple and routine tasks.

At steps two and three of the sequential evaluation, the ALJ assesses the functional impacts of mental-health impairments across four domains: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. § 404.1520a(c)(3); SSR 96-8p, 1996 WL 374184, *4 (July 2, 1996). For each domain, the ALJ rates the limitation using a five-point scale: (1) none; (2) mild; (3) moderate; (4) marked; or (5) extreme. 20 C.F.R. § 404.1520a(c)(4). An "extreme" limitation in a particular domain means the claimant cannot function in that area independently, appropriately, effectively, and on a sustained basis. *See* 20 C.F.R. § 404.1520a(c)(4). "Mild" connotes a slight limitation, "marked" suggests a serious one, and "moderate" indicates something

less than serious but more than slight. *Cf.* 20 C.F.R. § 404.1520a(c)(4) & (d). And at step five in the sequential analysis, an ALJ must account—explicitly or implicitly—for any moderate limitations in one or more of these domains when soliciting opinion testimony from a vocational expert, or the ALJ must indicate in the decision that the evidence otherwise supports the RFC that underlies the expert's opinions. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011).

Here, the ALJ found that Hardy had a moderate limitation in concentrating, persisting, or maintaining pace. (Tr. 19). And the ALJ's hypothetical to the vocational expert was restricted to work that does not require understanding, remembering, and carrying out more than simple instructions, or using judgment to make more than simple work-related decisions in a routine work setting. (Tr. 58). The expert then provided the three above-mentioned occupations as work that can be performed. (Tr. 58).

"[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Winschel*, 631 F.3d at 1180. On that score, the ALJ explained:

> In the claimant's treatment records, as discussed below herein, there is no consistent objective evidence that the claimant has

> to be frequently redirected back to the conversation or question or appeared to be responding to internal stimuli in the absence of substance abuse. The claimant's records do not show slowness of speech or slowness in response to questions, which shows good functioning in this area and the ability to be dependable and carryout a routine and have regular attendance. (Tr. 19).

Substantial evidence supports this conclusion.

In reaching the mental RFC finding, the ALJ discussed the medical evidence of record. The ALJ noted the repeatedly unremarkable mental status findings, including intact memory, fair attention, normal thought processes and content, and euthymic affect. (Tr. 22, 24, 663-71, 799, 849, 950-55, 1124-28). The ALJ also noted that by November 2020, about 20 months after initiating psychiatric treatment, Hardy was no longer being seen by psychiatry and declined a referral. (Tr. 25, 761, 1156). The ALJ also considered evidence that Hardy has lived alone or with a girlfriend throughout the relevant period, managed his household, drove, socialized, and did not seem to be particularly limited due to his mental impairments in terms of his daily activities. (Tr. 21-22, 52, 415-19, 439-41). Despite Hardy's testimony to the contrary, he reported to treating sources that he enjoyed golfing, going to the beach, and riding his golf cart. (Tr. 25, 53, 906).

"Because the medical evidence showed that [Hardy] could perform simple, routine tasks despite [his] limitations in concentration, persistence, and pace, the ALJ's limiting of [Hardy's] functional capacity to unskilled work sufficiently

accounted for [his] moderate difficulties in concentration, persistence, and pace." *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017). Thus, there is no reversible error.

## III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision, and there was no error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk of the court is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** on March 27, 2025

_____
NICHOLAS P. MIZELL
United States Magistrate Judge